UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE PACA TRUST CREDITORS OF
LENNY PERRY'S, INC.

                              Appellant/Appellee

      v.                                          **DECISION AND ORDER**
                                                              14-MC-036S

GENECCO PRODUCE, INC.

                              Appellee/Appellant.
_____

## I. INTRODUCTION

Lenny Perry's Produce, Inc., a defunct corporation based in Buffalo, New York, filed for Chapter 7 bankruptcy in 2009. Because Lenny Perry's was a produce distributor and seller, its bankruptcy implicates the Perishable Agricultural Commodities Act of 1930, 7 U.S.C. § 499a. *et seq.*, commonly referred to by the acronym "PACA." In 1984, Congress, concerned that bankruptcy proceedings often left produce-selling creditors with nothing, amended PACA to include certain statutory trust provisions.[1] Simply put, PACA creates a trust in favor of unpaid suppliers or sellers of such commodities; it provides suppliers with a right to payment before all other creditors, including secured lenders. See 7 U.S.C. § 499e(c).

In this bankruptcy case, the PACA Trust Creditors of Lenny Perry's Produce Inc., – *i.e.,* the beneficiaries of the statutory trust created by the Perishable Agricultural Commodities Act – initiated an adversary proceeding against Genecco Produce Inc.,

---

[1] In passing the law, Congress noted that "[m]any [buyers], in the ordinary course of their business transactions, operate on bank loans secured by [their] inventories, proceeds or assigned receivables from sales of perishable agricultural commodities, giving the lender a secured position in the case of insolvency. **Under present law, sellers of fresh fruits and vegetables are unsecured creditors and receive little protection in any suit for recovery of damages where a buyer has failed to make payment as required by the contract**." H.R.Rep. No. 98–543, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 405, 406 (emphasis added).

and its principal, David Genecco (collectively "Genecco"). The PACA trust argues that Genecco, a fellow dealer of perishable agricultural commodities, owes it over $200,000. In a Report and Recommendation issued on February 12, 2014, Bankruptcy Judge Michael J. Kaplan advised this Court to grant the motion. Both sides filed objections, and this Court must now undertake a *de novo* review of the summary-judgment motion. See 28 U.S.C. § 157(c)(1) and (2).

For the following reasons, the case is remanded for further proceedings.

## II. BACKGROUND

Genecco and Lenny Perry's frequently bought, sold or traded produce from, to, or with each other. There is no real dispute that Lenny Perry's sold Genecco $204,778.88 of fresh produce from 2005 to 2008. The PACA Trust alleges that under the Perishable Agricultural Commodities Act "a statutory trust arose in favor of Lenny Perry's as to all [p]roduce received by Defendants, all inventories of food or other products derived from said Produce, and the proceeds from the sale of such Produce until full payment is made by [Genecco] to Lenny Perry's." (Compl., ¶ 11.) The PACA Trust alleges that Genecco "failed and refused to pay Lenny Perry's the principal sum of $204,778.88 from the statutory trust plus accrued interest and fees." (Id., ¶ 26.)

Genecco sees it differently. There is no dispute that, in addition to the $204,778.88 in produce Lenny Perry's sold Genecco, Genecco also sold or provided $263,056.92 in produce to Lenny Perry's, resulting in a difference of $58,278.04. It appears that the parties simply recorded the value of the produce each had provided to the other, potentially with the intent to settle any balance later. Some money, however did exchange hands in the course of their dealings.

2

Genecco, which chose not to become a member of the PACA trust, asserted at an earlier stage of this litigation that it was entitled to a setoff. Genecco hoped to chalk-up the difference after the setoff – $58,278.04 – as "cost of doing business" and move on. It represented that it would assert no claim for those funds.

On August 14, 2012, in a Report and Recommendation that was ultimately adopted by this Court, Judge Kaplan agreed that, despite the presence of the PACA Trust, Genecco retained the right to seek a setoff. Specifically, Judge Kaplan found (and this Court ordered) that the defense "shall [not] be stricken as a matter of law." (Report and Recommendation, at 10; Docket No. 1 of 12-MC-055).

The case proceeded, and eventually the PACA Trust moved for summary judgment. In a Report and Recommendation addressing this motion, Judge Kaplan, focusing solely on one argument concerning whether the parties had a bartering relationship, found that Genecco "ha[d] failed to provide sufficient evidence to get to trial as to whether there was or was not a 'bartering relationship.'" (Report and Recommendation, at 5; Docket No. 1.) The court continued by noting that it was "satisfied that the parties were simply selling commodities to each other . . . maintaining open, off-setting accounts that remained so (meaning never materially reconciled by set off) right up until [Lenny Perry's] went out of business." (Id.) It found this sufficient to grant the PACA Trust's motion for summary judgment. The court concluded that the PACA Trust should have a money judgment against Genecco in an amount that is "the difference between the dollar amount owed by [Genecco] to [Lenny Perry's] (on the one hand) and the dollar amount (on the other hand) to which [Genecco] would be entitled as a PACA Trust beneficiary if [Genecco] were to pay to the PACA Trust all of the

money that it owed Lenny Perry's and then await distribution." (Id., at 6) (parenthesis in original; brackets supplied).  In other words, the Bankruptcy Court found that Genecco had failed to raise a triable issue of fact concerning whether it was entitled to setoff the amount Lenny Perry's owed it. It further found that Genecco should effectively pay the PACA Trust the $204,778.88 it owed Lenny Perry's.  And last, it found – without elaboration – that Genecco could become a beneficiary of the PACA trust and thus receive a *pro rata* share of the Trust's assets.[2]

### III. DISCUSSION

The central issue before this Court concerns the affirmative defense of setoff, which is also sometimes called "offset."  "Setoff is an established creditor's right to cancel out mutual debts against one another in full or in part." In re Patterson, 967 F.2d 505, 508 (11th Cir. 1992). Its purpose is to avoid "the absurdity of making A pay B when B owes A." Studley v. Boylston Nat'l Bank, 229 U.S. 523, 528, 33 S. Ct. 806, 57 L. Ed. 1313 (1913)).

Section 553 of the Bankruptcy Code preserves the right of a "creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case." 11 U.S.C. §553(a). The requisite elements of a §553 setoff are that: (1) the creditor holds a claim against the debtor that arose before the commencement of the case; (2) the creditor owes a debt to the debtor that also arose before the commencement of the case; (3) the claim and debt are mutual; and (4) the claim and

---

[2] At oral argument before this Court, the PACA Trust repeatedly maintained that Judge Kaplan found that Genecco was indeed entitled to a setoff. It argued that "the setoff amount is what [Genecco] owe[s] the PACA Trust minus what [Genecco] would take [as its] *pro rata* share of trust assets." (Oral Arg. Tr., 13:18–21). But this is not what Judge Kaplan found. Instead, Judge Kaplan found that Genecco could become a beneficiary of the Trust – that it could, in other words, receive a *pro rata* share of the estate after it paid into the estate. In this scenario, Genecco gets no setoff as to what Lenny Perry's owed it.

debt are each valid and enforceable. In re Steines, 285 B.R. 360, 362 (Bankr. D. N.J. 2002).

As noted above, the Bankruptcy Court found that Genecco was not entitled to a setoff because it failed to prove that it and Lenny Perry's had a bartering relationship. But even the PACA Trust agrees that "[w]hether Defendants 'bartered' or sold produce is irrelevant." (PACA Trust Br., at 3; Docket No. 93 of 09-01269-MJK.) As noted by Genecco at oral argument before this Court, bartering and setoff are different concepts. If the parties were truly bartering there would be no debt to setoff. Two tomatoes might be traded for four apples, and that would end the matter.

Instead, there appears to be no dispute in this case that "A owed B and B owed A." Specifically, Genecco owed $204,778.88 to Lenny Perry's, and Lenny Perry's owed $263,056.92 to Genecco. There further appears to be no dispute that these debts arose pre-petition. For its part, the PACA Trust argues that 11 U.S.C. §553 does not permit a setoff because the third element is not met: there is not (and never was) a "mutuality of obligations." It argues that an unsecured debt cannot offset a trust debt. The PACA Trust, quoting the Bankruptcy Court in the Southern District of New York, maintains that "[w]here the liability of a the party claiming the right of offset arises from a fiduciary duty or is in the nature of a trust, the requisite mutability of debts or credits does not exist, so that such party may not offset against such liability a debt owing from the debtor stemming from a different relationship." Ross-Viking Merchandise Corp. v. Am. Cyanamid Co., Lederle Div., 151 B.R. 71, 74 (Bankr. S.D.N.Y. 1993).

Genecco counters that the right to setoff emerged before the proceeds became assets of the PACA Trust. And, therefore, when those assets became property of the

trust, they remained encumbered with the defense of setoff. "Due to the fluidic nature of the asserts making up a PACA trust," argues Genecco, "once assets are subject to a defense like setoff, they are no longer legitimate assets to which PACA trust beneficiaries are entitled." (Genecco Br. at 14; Docket No. 1.)

Undeterred, the PACA Trust contends that Lenny Perry's receivables from Genecco were, by virtue of the Perishable Agricultural Commodities Act, *always* trust assets. At no point, then, could the right to setoff have attached.

The Bankruptcy Court, finding dispositive the lack of evidence regarding bartering, did not address any of these contentions. Nor did it fully address the implications of its earlier finding and this Court's ruling that "it is not unreasonable for [Genecco] to have relied upon its belief that ordinary setoff rights as to 'receivables' would apply." (Report and Recommendation, at 10; Docket No. 1 of 12-MC-055.) This finding may preclude the PACA Trust's argument that receivables were always PACA Trust assets.

Although this Court agrees with the Bankruptcy Court that there is insufficient evidence to establish that Genecco and Lenny Perry's engaged in a bartering relationship, it cannot agree that this finding alone resolves the motion for summary judgment. For that reason, this Court will remand this action back to the Bankruptcy Court for further proceedings consistent with this opinion. On remand, the Bankruptcy Court should address whether the mutuality-of-obligations prong has been met, and, relatedly, whether the lack of "running setoffs" or a pre-petition "setoff agreement" means that any debt Genecco owes Lenny Perry's is, statutorily, a PACA Trust asset,

and thus not eligible for setoff under § 553. It should also address whether the earlier ruling in this case forecloses the PACA Trust's mutuality-of-obligations argument.

## IV. CONCLUSION

The Bankruptcy Court rested its decision on the lack of a bartering relationship between Genecco and Lenny Perry's. But this Court finds that that conclusion does not entirely resolve the matter. In particular, it remains unclear whether the claim and the debt are "mutual." Accordingly, the case is remanded for further proceedings.

## V. ORDERS

IT HEREBY IS ORDERED that this case is REMANDED to the Bankruptcy Court for proceedings consistent with this Decision and Order.

SO ORDERED.

Dated: August 29, 2014
       Buffalo, NY

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              Chief Judge
                              United States District Court